## Case No. 8,000.

### LALLANDE et al. v. The C. D. JR.

#### [Newb. 501.] [1]

District Court, E. D. Louisiana. Feb., 1855. [2]

NAVIGABLE WATERS — OBSTRUCTION OF — RAFT—
ACTION FOR DESTRUCTION OF.

1. All navigable streams should be left open, and no one has a right to obstruct the path of vessels along their channels.

[Cited in The Athabasca, 45 Fed. 654.]

2. Where a raft had been driven by the vis major into a channel of the river, and obstructed it, and had remained there an unreasonable length of time, and no anxiety had been exhibited by the party in charge, and no exertion made by him to extricate it, that would afford ample grounds for the master of a steamboat to take the necessary steps for its removal.

3. But when every effort was made to remove the raft from the channel, no apprehensions of a pecuniary loss on the part of the steamboat from a reasonable delay would afford an excuse or justification for the violent and summary destruction of the raft by the master of the steamboat.

In admiralty.

F. Clark, for libelants.
S. L. Johnson, for respondent.

McCALEB, District Judge. This action has been instituted by the libelants [Lallande and Tong] to recover the value of a raft of cotton wood logs which it is alleged was almost entirely lost in consequence of the acts of the master of the steamboat C. D. Jr. The raft in question was, on the night of the 25th of March last, driven by the force of the wind from its position, while coming down the Mississippi river, into the mouth of the Bayou Lafourche. While it was lying in that position, the steamboat C. D. Jr., then on her voyage from New Orleans to Thibodeauxville, arrived at Donaldsonville, and attempted to enter the Bayou Lafourche. In making the attempt she ran foul of the raft, and was unable to effect her entrance into the bayou. On the following morning, the libelants proposed to the master of the C. D. Jr. to tow the raft from the mouth of the bayou into the river;

but this the latter refused to do. He however insisted upon the immediate removal of the raft, and threatened in case his wishes were not speedily acceded to, to order the raft to be cut, and let the logs float with the current down the bayou. The libelant Lallande, then endeavored to secure the assistance of the steamboat Music, in getting the raft towed out of the mouth of the bayou; but before that assistance could be rendered, the master proceeded to cause the raft to be cut up, and almost all the logs thereupon floated down the bayou and were lost. The few logs that were recovered, were sold at Donaldsonville for a price below their real value at Carrollton, whither the raft was proceeding at the time it was driven by the force of the wind into the mouth of the bayou.

The respondents have also set up a claim for damage alleged to have been sustained in consequence of the loss of time and passengers, caused by the obstruction of the entrance of the bayou. Their right to recover must, however, depend upon the question whether the raft was driven into the position in which it was found by the steamer, by the force of the wind, or in consequence of a want of skill and caution on the part of those who had charge of it. The evidence leaves no doubt upon my mind that every exertion was made to prevent the raft from drifting into the mouth of the bayou; and that the misfortune of the libelants was solely the consequence of vis major, a power to which they could oppose no effectual resistance, and over which it was impossible under the circumstances as detailed by the evidence, to exercise the requisite control.

Having thus disposed of the claim of the respondents, I will proceed briefly to consider the only question which properly arises in this case, viz: how far the conduct of the captain of the C. D. Jr. was, under all the circumstances disclosed by the evidence, justified. It is unquestionably true that all navigable streams should be left open, and that no one has a right to obstruct the path of vessels along their channels. It is equally true that a nuisance may be abated; and if it were shown in the present case, that the raft had remained in the position into which it had been driven, for an unreasonable length of time; if no anxiety had been exhibited by the party in charge of it, and no exertion made by him to extricate it, there would have been ample grounds for the master of the steamer to take the necessary measures to have it removed. What those measures should have been, it is now unnecessary to decide; but the evidence shows no sufficient reason for justifying or excusing the summary proceeding resorted to. A single night only had intervened since the misfortune had occurred. The party in charge of the raft, exhibited the greatest solicitude to remove it, and was actually exerting himself to obtain the assistance of a steamboat to enable him to accomplish his object, at the very time the order

---

[1] [Reported by John S. Newberry, Esq.]
[2] [Affirmed by circuit court; case unreported.]
14 FED. CAS.—61

to cut loose the logs, was given and executed. It has been contended that it was impossible even with the assistance of the steamer Music, to remove the raft. But the evidence does not, I think, fully authorize the conclusion. The captain of the Music testifies that it was impossible for his boat to pull the raft from its position, while the violence of the wind continued; and I am by no means satisfied that if proper measures had been resorted to, to separate one portion of the raft from the other, that it could not have even then been drawn from its position. But I see nothing extraordinary in requiring a reasonable delay for the wind to lull, and thus afford to the libelants a fair opportunity to make an effort to remove the obstruction. It would have been more in accordance with that generosity which is always due to those in misfortune, and more consonant with the dictates of common justice, if the master of the C. D. Jr. had proffered the assistance of his own boat to relieve the property of the libelants from the position in which a force beyond their control had placed it, especially when an offer was made to compensate him for his services. The hot haste and violence he exhibited in destroying the raft show such a total disregard of the rights of the libelants, that, sitting as I do, in a court of high equity powers, I feel fully authorized by the evidence to hold him responsible for the consequences of his recklessness and temerity. I cannot give my assent to the doctrine that misfortunes are to be punished as crimes or faults; or that mere apprehensions of a pecuniary loss from a reasonable delay, are to be received as an excuse or justification for the summary and violent proceedings resorted to by the master of the steamer in this instance.

I therefore pronounce for the damages in this case to be ascertained by a reference to R. M. Lusher, Esq., commissioner in admiralty.

This decree was affirmed on appeal to the circuit court, by Mr. Justice Campbell. [Case unreported.]